IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HERSCHEL ELIAS,<br>            Plaintiff,<br><br>      v.<br><br>TOWNSHIP OF CHELTENHAM;<br>SERGEANT EDWARD BASKIN;<br>OFFICER MICHAEL CORBO; and<br>JOHN DOE POLICE OFFICER,<br>            Defendants. | CIVIL ACTION<br><br>NO. 14-6117 |

**MEMORANDUM OPINION**

**I.      INTRODUCTION**

Before the Court is the Defendants Township of Cheltenham, Sergeant Edward Baskin, and Officer Michael Corbo's Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) and Motion to Strike Pursuant to Fed. R. Civ. P. 12(f) [ECF No. 3], filed on January 5, 2015.  Under the Court's Policies and Procedures, the Plaintiff had 21 days to file a response to the Motion.  As those 21 days have passed and the Plaintiff has yet to respond, the Court will consider the Motion unopposed but, given the Plaintiff's pro se status, will give the merits of the Complaint due analysis.[1]

Plaintiff Herschel Elias brings this action against the Defendants pursuant to 42 U.S.C. § 1983 and state tort law claiming that the defendants violated his Fourth and Fourteenth Amendment rights by using excessive force during an investigatory stop, and that in doing so

---

[1] Summarily dismissing a plaintiff's complaint as "unopposed" without any analysis of the merits is, in essence, "a sanction or failure to comply with the local court rule . . . . [S]uch a sanction should not be invoked lightly when the plaintiff is pro se and the record evidences an intent to oppose dismissal, regardless of the plaintiff's noncompliance with local procedure."  *Senox v. Hawbecker*, 441 F. App'x 128 (3d Cir. 2011) (citing *Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 30 (3d Cir. 1991) ("[An] action should not [be] dismissed solely on the basis of the local rule without any analysis of whether the complaint fail[s] to state a claim upon which relief can be granted, as provided in Fed. R. Civ. P. 12(b)(6).")).

Sergeant Baskin, Officer Corbo, and an as-yet-unidentified Cheltenham Township Police Officer also committed assault and battery on the Plaintiff.

The Court has federal question jurisdiction over Counts I, II, and III (asserting the Plaintiff's Section 1983 claims) pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over Count IV (asserting the Plaintiff's state law claims) pursuant to 28 U.S.C. § 1367.

The Defendants move to dismiss the Plaintiff's claim in Count III against the Township on the ground that the Plaintiff has failed to allege liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), because the Complaint includes no viable allegations that the municipality supported a violation of his constitutional rights. [ECF No. 3 at 6-10.] The Defendants also move to strike Exhibit B to the Complaint—a civil rights complaint brought by a different plaintiff in an unrelated matter against a number of defendants, two of whom are also defendants in the Complaint before the Court—proffering as justification the case's ultimate dismissal with prejudice. They also move to strike the Plaintiff's claim for punitive damages, arguing that punitive damages are not available against municipal entities and the moving Officers in their official capacities. [ECF No. 3 at 10-11.]

Upon consideration, the Motion to Dismiss will be GRANTED as to Count III and the Complaint will be dismissed on this Count without prejudice and with leave to amend. The Motion to Strike will be DENIED as to Exhibit B to the Complaint and GRANTED IN PART as to the Plaintiff's demand for punitive damages.

## II.     FACTUAL BACKGROUND

The facts alleged in the Complaint are summarized as follows. The Plaintiff was involved in an altercation on October 27, 2012, with an associate, Mark Bosack, regarding a loan the Plaintiff made to Mr. Bosack secured by Mr. Bosack's tools as collateral. [ECF No. 1 ¶¶ 9-

11.] When the Plaintiff refused to return the tools to Mr. Bosack until the entire loan was repaid, Mr. Bosack threatened to, in conjunction with two other men, break into the carriage house where the tools were stored and retrieve them. [*Id.* ¶ 12.] The Plaintiff then called the Cheltenham Police Department to assist him in removing Mr. Bosack. [*Id.* ¶¶ 13-14.] When the first officer, Defendant Officer Corbo, arrived on the scene at the Plaintiff's home, he observed the Plaintiff, Mr. Bosack, and Mr. Bosack's associates in the driveway outside the Plaintiff's house. [*Id.* ¶ 15.] Shortly thereafter, Sergeant Baskin and two other police officers arrived, one of whom is an unidentified defendant ("John Doe") in this case. [*Id.* ¶ 16.]

Upon the remaining officers' arrival, Plaintiff informed the Defendants that the situation between him and the other three men had settled since he made the emergency call and that police assistance was no longer needed. [*Id.* ¶ 17.] The Defendants, holding the Plaintiff and the other men "at gunpoint," stated that protocol required them to identify all parties on scene and ordered the Plaintiff to sit. [*Id.* ¶ 18.] Plaintiff later stood and was knocked to the ground by Officer Corbo, after which he retrieved a pencil to take the Defendants' badge numbers. [*Id.* ¶¶ 19-20.] Officer Baskin yelled to the Plaintiff to put the pencil down, and when the Plaintiff refused, Officer Corbo and Sergeant Baskin "deliver[ed] blows and knee strikes and forc[ed]" the Plaintiff to the ground. [*Id.* ¶¶ 21-22.] A later-filed police report classified the incident as a "civil dispute." [*Id.* ¶ 23; *see also id.* Ex. A.]

### III.   LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  *Id.* (quoting *Twombly*, 550 U.S. at 556-57 (internal quotation marks omitted)).

"In light of *Twombly*, 'it is no longer sufficient to allege mere elements of a cause of action; instead a complaint must allege facts suggestive of [the proscribed conduct].'" *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 177 (3d Cir. 2010) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)).  "Context matters in notice pleading," and thus "some complaints will require at least some factual allegations to make out a 'showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Phillips*, 515 F.3d at 232 (quoting *Twombly*, 550 U.S. at 555).  Stating a claim "'requires a complaint with enough factual matter (taken as true) to suggest' the required element," calling for "'enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.'" *Great Western Mining*, 615 F.3d at 177 (quoting *Twombly*, 550 U.S. at 556).  "In other words, 'there must be some showing sufficient to justify moving the case beyond the pleadings to the next stage of litigation.'"  *Id.* (quoting *Phillips*, 515 F.3d at 234-35).

Under Third Circuit precedent, determining whether a complaint meets the pleading standard involves a three-step analysis: (1) "outline the elements a plaintiff must plead to state a claim for relief"; (2) "peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth"; and (3) "look for well-pled factual allegations, assume their

veracity, and then 'determine whether they plausibly rise to an entitlement to relief.'" *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012) (quoting *Iqbal*, 556 U.S. at 679) (citations omitted).

### IV.  MOTION TO DISMISS *MONELL* CLAIM (COUNT III)

In interpreting the Plaintiff's stated claim for relief in Count III, the Court is guided by the rule in *Monell v. Department of Social Services*, 436 U.S. 658 (1978), in which the U.S. Supreme Court held that, in essence, "plaintiffs may not rely on a theory of respondeat superior to impose liability on municipalities." *Brown v. City of Pittsburgh*, 586 F.3d 263, 292 (3d Cir. 2009). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is liable under § 1983." *Monell*, 436 U.S. at 694. At bottom, "tortious conduct, to be the basis for municipal liability under § 1983, must be pursuant to a municipality's 'official policy.'" *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986).

There is a "two-path track" to municipal liability, depending on whether a Section 1983 claim is premised on municipal policy or custom:

> A government policy or custom can be established in two ways. Policy is made when a decisionmaker possess[ing] final authority to establish a municipal policy with respect to the action issues an official proclamation, policy, or edict.  A course of conduct is considered to be a "custom" when, though not authorized by law, such practices of state officials [are] so permanently and well-settled as to virtually constitute law.

*McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). Federal Rule of Civil Procedure 8(a)(2) "requires a 'showing,' rather than  blanket assertion, of entitlement to relief" that rises "above the speculative level." *Phillips*, 515 F.3d at 231-22 (quoting *Twombly*, 550 U.S. at 555 & n.3).

The Plaintiff's *Monell* claim rests merely on conclusory allegations in the Complaint—blanket assertions of the "unadorned, the-defendant-wrongfully-harmed-me accusation" type

5

specifically disallowed in a Rule 8(a)(2) pleading under *Twombly* and *Iqbal*, and of the type the Court is required to "peel away" under Third Circuit law.  *See Iqbal*, 556 U.S. at 678; *Bistrian*, 696 F.3d at 365.  The Complaint contains such allegations as:

> The Township of Cheltenham has wholly failed its duty to instruct, supervise, control, and discipline on a continuing basis Officers Corbo, Sgt. Baskin, and John Doe, in their duties to refrain from (i) unlawfully and maliciously employing excessive force against a citizen who was acting in accordance with his constitutional and statutory rights, privileges, and immunities; and (ii) unlawfully seizing a citizen who was acting in accordance with his constitutional and statutory rights, privileges, and immunities.  [ECF No. 1 ¶ 45.]
>
> Defendant Cheltenham Township had knowledge or, had the Police Department diligently exercised its duties to instruct, supervise, control, and discipline on a continuing basis, should have had knowledge that the wrongs . . . committed by the Defendant Officers were about to, or were likely to be committed.  [*Id.* ¶ 46.]
>
> Defendant Cheltenham Township has both directly and indirectly, approved and ratified the intentional, unlawful, deliberate, malicious, reckless, and wanton conduct of Defendant police officers . . . because it has failed to train and discipline said Defendants.  [*Id.* ¶ 50.]

The Plaintiff has simply failed to specify the relevant "custom" or "policy" here.  *See McTernan*, 565 U.S. at 658-59.  He has not presented "*any* facts regarding an official policy or custom on the part of the Township that caused civil rights violations to be made against him. Instead, he offers only bald assertions that such policies or customs existed without any support that would suggest that what happened to him . . . were not idiosyncratic actions of individual public actors." *Burke v. Township of Cheltenham*, 742 F. Supp. 2d 660, 675 (E.D. Pa. 2010) (emphasis in original) (citing *Hall v. Raech*, No. 08-5020, 2009 WL 811503, at *5 (E.D. Pa. Mar. 25, 2009) (refusing to dismiss *Monell* claims where plaintiff identified a specific training deficiency, explained why prior events should have demonstrated to the municipality the need for training, and averred that the deficiency caused the violation of his constitutional rights)).

The Supreme Court has mandated that "rigorous standards of culpability and causation" must be satisfied to impose municipal liability. *Bd. of Comm'rs v. Brown*, 520 U.S. 397, 405 (1997). The Plaintiff's allegations fail to meet those rigorous standards—even here at the motion to dismiss stage, with inferences drawn in his favor.

The motion to dismiss the claim in Count III against the Township shall therefore be granted.  And as a *Monell* claim can be brought only against a municipality, and not against individuals, *e.g.*, *City of St. Louis v. Praprotnik*, 485 U.S. 112, 165 (1988), dismissal of the claim in Count III against the Township necessitates the dismissal of Count III in its entirety without prejudice.[2]

### V.     MOTION TO STRIKE

#### A.     Complaint Exhibit B

Defendants move that this Court strike from the record Exhibit B to the Complaint, the complaint in *Burke v. Township of Cheltenham*, No. 10-1508 (E.D. Pa.), but provide no citation to rule, statute, or case law to support their request.  Accordingly, the Motion to Strike Exhibit B to the Complaint is denied. *See United States v. Benish*, 5 F.3d 20, 26 (3d Cir. 1993) (rejecting a party's claim where the party "provid[ed] no legal support for his argument or any persuasive reason" for the court to find in his favor).

#### B.     Demand for Punitive Damages

Finally, Defendants move that this Court strike the Plaintiff's demand for punitive damages.  Defendants are correct in their assertion that "[p]unitive damage claims cannot stand against a municipality or its officers in their official capacities."  [ECF No. 3 at 11.]; *see Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 259-66.  While it is true that the Plaintiff may seek punitive

---

[2] When dismissing a civil rights complaint for failure to state a claim, a district court must grant the plaintiff leave to amend—even when the plaintiff does not request leave—unless amendment would be inequitable or futile. *See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007).

damages against the Defendant officers in their individual capacities, *see Smith v. Wade*, 461 U.S. 30, 57 ("[A] jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."), his demand for punitive damages against the Township or against the Officer Defendants in their official capacities shall be stricken.

An Order consistent with this Memorandum follows.

Dated: **January 27, 2015**

                                                  **BY THE COURT:**

                                                  **/s/ Wendy Beetlestone**
                                                  _____
                                                  **WENDY BEETLESTONE, J.**