IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **HERSCHEL ELIAS,**<br>            Plaintiff,<br><br>      v.<br><br>**TOWNSHIP OF CHELTENHAM;**<br>**SERGEANT EDWARD BASKIN;**<br>**OFFICER MICHAEL CORBO; and**<br>**JOHN DOE POLICE OFFICER,**<br>            Defendants. | CIVIL ACTION<br><br>NO.  14-6117 |

### MEMORANDUM OPINION

This case arises out of an altercation between Plaintiff Herschel Elias ("Elias") and police officers who were responding to his 911 call reporting a burglary in progress.  Plaintiff sues police officers Edward Baskin, Michael Corbo, and John Doe (collectively, the "Individual Defendants"), alleging claims for excessive force under 42 U.S.C. § 1983, illegal seizure under 42 U.S.C. § 1983, and state law claims for assault and battery.  Plaintiff also sues the Individual Defendants' employer, Cheltenham Township, asserting a claim under *Monell v. City of N.Y. Dept. of Social Servs.*, 436 U.S. 658 (1978).  Before the Court is defendants' motion for summary judgment as to each of Elias' claims.  For the reasons discussed herein, summary judgment is granted in favor of the defendants as to Counts I (excessive force) and II (illegal seizure); Elias' remaining claims under Count III (assault and battery) shall be dismissed as a matter of discretion pursuant to 28 U.S.C. § 1367(c), without prejudice to that claim being asserted in state court.

I.     Background

On October 27, 2012, Mark Bosack, Salvatore Venezia, and William Roveran traveled to plaintiff Herschel Elias' home, at his request, to pick up Bosack's tools that had been left in Elias' carriage house.  Joint Appendix ("JA") 1, Defendants' Statement of Material Undisputed Fact in Support of Motion for Summary Judgment ("Def. Facts") ¶¶ 1, 5-6, 10; Plaintiff's Counter-Statement of Material Facts ("Pl. Resp.") ¶¶ 1, 5-6, 10.

Upon arriving, Venezia and Roveran remained in the vehicle while Bosack spoke with Elias.  Def. Facts ¶¶ 40-42; Pl. Resp. ¶¶ 40-42.  Bosack demanded his tools back and threatened that if Elias did not open the carriage house immediately he would break the door open.  JA 34-35.  Elias called 911 and informed the operator that "a male is trying to break in," and, moments later, "the male is inside."  Def. Facts ¶ 7; Pl. Resp. ¶ 7.  Cheltenham police treated Elias' call as a report of a felony burglary in progress.  Def. Facts ¶ 8; Pl. Resp. ¶ 8; 18 Pa.C.S.A. §§ 1103(1), 3502(a)(1).  Due to the nature of the report, Sgt. Baskin, Officer Corbo, and Officer Hungerford responded quickly, and some of the officers activated the lights and sirens on their vehicles.  Def. Facts ¶¶ 13-14; Pl. Resp. ¶¶ 13-14.

The officers arrived with their guns drawn; Elias identified himself as the individual who had called 911 and informed the officers that they were no longer needed.  JA 49, 60; JA 129; JA 145; Def. Facts ¶ 15; Pl. Resp. ¶ 15.  Nevertheless, the officers explained that they needed to check everyone's identification and instructed Elias to sit.  Def. Facts ¶ 16; Pl. Resp. ¶ 16.  Elias told them "this is ridiculous."  JA 105.  One of the officers stated to Elias, "we can arrest you for false reports."  Def. Facts ¶ 17; Pl. Resp. ¶ 17.  Officers Hungerford and Corbo ordered Elias and Bosack to put their hands on the exterior wall of the house to be patted down; Elias did not comply.  Def. Facts ¶¶ 43-45; Pl. Resp. ¶¶ 43-45.

Elias then took a "very sharp" pencil out of his pocket to take down the officers' badge numbers. JA 4, 155; Def. Facts ¶ 18; Pl. Resp. ¶ 18. Pennsylvania police officers are trained to treat a sharpened pencil as a weapon when used in a threatening manner. Def. Facts ¶ 37; Pl. Resp. ¶ 37. Sgt. Baskin instructed Elias to "put the pencil down," but Elias refused to do so. JA 4; Def. Facts ¶¶ 19-20; Pl. Resp. ¶¶ 19-20. Sgt. Baskin forced Elias to the ground and pinned his arm while Officer Corbo removed the pencil from Elias' hand. Def. Facts ¶¶ 52-53; Pl. Resp. ¶¶ 52-53. In the struggle, Elias was struck in the knee and punched by the officers. JA 58. Elias sought medical treatment after the altercation but did not suffer any physical injuries. JA 60; Def. Facts ¶ 55; Pl. Resp. ¶ 55.

Elias was never placed in handcuffs or placed under arrest. JA 84.

## II.     LEGAL STANDARD

Summary judgment, pursuant to Federal Rule of Civil Procedure 56(a), "is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Alabama v. North Carolina*, 560 U.S. 330, 345 (2010) (citations and internal quotation marks omitted). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). "A genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-26 (1986); *Anderson*, 477 U.S. at 248-52). A fact is material if it might affect

3

the outcome of the suit under the governing law. *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006).

The reviewing court should view the facts in the light most favorable to the non-moving party and "draw all reasonable inferences in that party's favor." *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013). However, "the non-moving party must present more than a mere scintilla of evidence; 'there must be evidence on which the jury could reasonably find for the [non-movant].'" *Jakimas v. Hoffmann-LaRoche, Inc.*, 485 F.3d 770, 777 (3d Cir. 2007) (citing *Anderson*, 477 U.S. at 252).

### III.   ANALYSIS

#### A.   *Section 1983 Excessive Force*[1]

Elias contends that the Individual Defendants used excessive force when they tackled him to the ground for holding a pencil. Am. Comp. ¶ 28. Qualified immunity shields government officials from civil damages liability unless the official: (1) violated a statutory or constitutional right; and, (2) the right was clearly established at the time of the challenged conduct. *See e.g.*, *Reichle v. Howards*, 132 S.Ct. 2088, 2093 (2012); *Taylor v. Barkes*, 135 S.Ct. 2042 (2015). District courts have discretion as to the order in which to address the two-part test. *See Egolf v. Witmer*, 526 F.3d 104, 110 (3d Cir. 2008); *Ashcroft v. al-Kidd,* 563 U.S. 731, 731 (2011). When the material facts are not in dispute, as is the case here[2], the question of whether a government official has established the defense of qualified immunity is a matter of law. *See Anderson v. Creighton*, 483 U.S. 635, 639 (1987).

---

[1] Elias concedes that he has not adduced sufficient evidence to establish genuine issues of material fact as to his claim against the Township of Cheltenham. Opp'n at 1. Accordingly, the Court grants summary judgment in favor of the Township of Cheltenham on Count I (excessive force).

[2] Defendants' concerns about Elias' credibility, Mtn. at 2, 7, are of no moment here given that "credibility determination[s are] inappropriate in the summary judgment context." *Hughes v. Smith*, 237 F. App'x 756, 760 (3d Cir. 2007).

4

To be clearly established, the "right must be sufficiently clear [such] that every reasonable official would have understood that what he is doing violates that right." *Reichle,* 132 S.Ct. at 2093. Excessive force claims arise under the Fourth[3] Amendment's guarantee of individuals' "right 'to be secure in their persons . . . against unreasonable . . . seizures' of the person." *Graham v. Connor*, 490 U.S. 386, 394 (1989) (quoting U.S. Const. amend IV). The "factors relevant to the excessive force analysis are well-recognized," and the contours of the right have been thoroughly defined. *Couden v. Duffy*, 446 F.3d 483 (3d Cir. 2006). With regard to whether the Individual Defendants violated Elias' clearly-established constitutional rights, there must be a "careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (quoting *Tennessee v. Garner*, 471 U.S. 1, 7-8 (1985)). "'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' violates the Fourth Amendment." *Id.* (citing *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)).

This fact-specific analysis requires consideration of "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. Additional factors for consideration are: "the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the

---

[3] To the extent that Elias has attempted to plead a Fourteenth Amendment violation, it will be dismissed. *See Graham,* 490 U.S. at 394–95 ("claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach").

number of persons with whom the police officers must contend at one time." *Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997).

There must also be "allowance for the fact that police officers are often forced to make split-second judgments, in circumstances that are tense, uncertain, and rapidly evolving, about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97. Speculating with the benefit of hindsight as to "how the police 'should have' apprehended someone is irrelevant," because the analysis is "concerned with the split-second decisions required by the realities of on-the-ground police work." *Gannaway v. Karetas*, 438 F. App'x 61, 67 (3d Cir. 2011); *see also Graham*, 490 U.S. at 396-97.

The analysis here must be viewed in the context of the 911 call Elias made reporting a burglary in progress and that the intruder had entered his home. Under Pennsylvania law, burglary is a first-degree felony punishable by a maximum sentence of twenty years of imprisonment. *See* 18 Pa. C.S.A. §§ 1103(1), 3502(a)(1). Reflecting the seriousness of the reported crime, police units responded at a high rate of speed with some officers activating the lights and sirens on their vehicles. The officers arrived at the scene with their guns drawn and observed four individuals, two of whom were already inside a vehicle. The Individual Defendants had no way of knowing which of the men may have been a victim or a perpetrator, whether any of them were armed, or whether any would attempt to flee upon the arrival of law enforcement. Elias refused to place his hands against the wall to be patted down and pulled a sharp pencil out of his pocket.

Viewing the facts in the light most favorable to the non-moving party, the assumption must be that Elias' method of holding the pencil was non-threatening.[4]  Nevertheless, there is no dispute that Elias refused an order from police to put the pencil down.  *Cf. Gannaway*, 438 F. App'x at 67 ("[plaintiff] fails to explain how the police were to recognize that he posed no danger . . .").  In response to that refusal the officers had at their disposal a variety of weaponry but they chose to subdue Elias with physical strength alone, and Elias suffered no physical injury.  Under these circumstances, tackling Elias was, even in hindsight, a reasonable way to induce compliance while ensuring the safety of all present, and it cannot be said that "every reasonable official would have understood" that tackling Elias under these circumstances violated his constitutional rights.  *Cf. Brown v. Cwynar*, 484 F. App'x 676, 678-79 (3d Cir. 2012) (officers entitled to qualified immunity after tasing a 73-year old man who refused to exit his vehicle and resisted police efforts to subdue him); *Draper v. Reynolds*, 369 F.3d 1270, 1278 (11th Cir. 2004) (police use of a taser during a traffic stop was "reasonably proportionate" to plaintiff's refusal to comply with several requests, which created a "tense and uncertain situation," and where the use of force caused no injury).  Defendants are therefore entitled to qualified immunity for their conduct, and summary judgment is granted against Elias' excessive force claim.

B.      *Section 1983 Illegal Seizure*

While conceding that the Individual Defendants had reasonable suspicion to approach and briefly detain him for investigative purposes, Elias contends that he was unreasonably seized in violation of his Fourth Amendment rights. Am. Comp. ¶¶ 37-38.  A seizure occurs when a

---

[4] Neither party alleges that Elias verbally threatened the officers while holding the pencil. Defendants' claim is that Elias "brandished a pencil . . . with the point facing outward toward the officers" (Def. Facts ¶ 51), while plaintiff maintains that he merely held a "very sharp" pencil so that he could write down the officers' names and badge numbers.  Pl. Resp. ¶ 18-21; Am. Comp. ¶ 20.

7

suspect "submits to the police's show of authority or the police subject him to some degree of physical force." *Abraham v. Raso*, 183 F.3d 279, 291 (3d Cir. 1999). Generally, a seizure is reasonable only where it is justified by a warrant or probable cause. *Couden*, 446 F.3d at 494. However, even absent probable cause, an officer may still conduct a "*Terry* stop," that is, a "brief, investigatory stop when the officer has a reasonable articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (citing *Terry v. Ohio*, 391 U.S. 1, 30 (1968)).

In determining whether the reasonable suspicion standard is satisfied, a court must "consider the totality of the circumstances, including the police officer's knowledge, experience, and common sense judgments about human behavior." *United States v. Robertson*, 305 F.3d 164, 167 (3d Cir. 2002). There is no per se rule about the length of time a suspect may be detained so long as "the police were diligent in accomplishing the purpose of the stop as rapidly as possible." *Baker v. Monroe Twp.*, 50 F.3d 1186, 1192 (3d Cir. 1995) (detaining individuals in a home during a drug raid for fifteen minutes was reasonable).

As discussed in Section III(A), the Individual Defendants' conduct in subduing Elias did not violate his constitutional right against excessive force, a right that arises from the Fourth Amendment's guarantee against unreasonable seizures. That calculus does not change in the context of a broader illegal seizure claim. Certainly, Elias should not be surprised that, upon reporting a serious crime in progress, police would respond with an appropriate degree of caution and force proportionate to the alleged crime. Even if Elias told the officers that their presence was no longer needed, there was no immediate way for the officers to determine if Elias – or any of the other men – was being coerced into compliance by the reported burglar. Elias then refused an order to place his hands on the wall, and further escalated the situation by producing a

sharpened pencil and refusing to put it down.  Elias even acknowledges that the officers had sufficient reasonable suspicion to approach and briefly detain him.  In light of the facts in this case and the factors outlined in *Sharrar*, the Individual Defendants' actions, from drawing their weapons to tackling Elias, constituted an objectively reasonable seizure.  Because the Individual Defendants did not violate Elias' Fourth Amendment right against unreasonable seizure, they are entitled to qualified immunity.  Accordingly, summary judgment is granted against Elias' illegal seizure claim.

### C. *State Tort Claims*

Elias' only remaining claim is for assault and battery arising under state tort law.  A district court may decline to exercise pendent jurisdiction if it has dismissed all claims over which it has original jurisdiction.  *See* 28 U.S.C. § 1367(c); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 357 (1988) ("wide discretion to remand rather than to dismiss . . . best serves the principles of judicial economy, procedural convenience, fairness to litigants, and comity to the States"); *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966) (pendent jurisdiction "is a doctrine of discretion, not of plaintiff's right").

Where, as here, all federal claims have been "dismissed on summary judgment, 'the court should ordinarily refrain from exercising [supplemental] jurisdiction in the absence of extraordinary circumstances.'"  *Angeloni v. Diocese of Scranton*, 135 F. App'x 510, 514-15 (3d Cir. 2005) (alteration in original) (citing *Tully v. Mott Supermarkets, Inc.*, 540 F.2d 1187, 1196 (3d Cir. 1976)).  Neither party has identified extraordinary circumstances that would warrant the state claims being heard in federal court.  Consequently, the decision to remand the remaining tort claims "reflects the court's judgment . . . that at the present stage of litigation it would be

9

best for supplemental jurisdiction to be declined so that state issues may be adjudicated by a state court." *Combs v. Homer-Center Sch. Dist.*, 540 F.3d 231, 253 (3d Cir. 2008).

While the case has been pending in this Court for some time and the parties have taken discovery, they will be able to use the information gleaned in discovery in the state court proceedings. *See Annulli v. Pamikkar*, 200 F.3d 189, 203 (3d Cir. 1999), *overruled on other grounds by Rotella v. Wood*, 528 U.S. 549 (2000). Moreover, Elias "knowingly risked dismissal of his pendent claims when [he] filed suit in federal district court and invoked the Court's discretionary supplemental jurisdiction power." *Id.*

Accordingly, the Court declines to exercise supplemental jurisdiction and dismisses Count III (assault and battery) without prejudice to the claim being asserted in state court.[5]

                    **BY THE COURT:**

                    **/S/WENDY BEETLESTONE, J.**

                    _____

                    **WENDY BEETLESTONE, J.**

---

[5] "When a District Court declines to exercise supplemental jurisdiction over state law claims, the statute of limitations is tolled while the federal suit is pending and for a period of 30 days after the suit is dismissed." *Petrossian v. Cole*, 613 F. App'x 109 (3d Cir. 2015) (citing 28 U.S.C. § 1367(d) ("The period of limitations for any claim asserted under subsection (a) ... shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period")).